DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
ANDREW F. DAWSON (CABN 264421)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   FAX: (415) 436-7234
   Lloyd.Farnham@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. CR 20-0260 RS |
|     Plaintiff, ) | |
| v. ) | STIPULATION AND ORDER REGARDING CHANGE OF PLEA HEARING |
| JACK ABRAMOFF, ) | |
|     Defendant. ) | |

      The parties in the above-captioned matter have reached an agreement to resolve the pending charges filed in this case by Information. The plea agreement attached hereto as Exhibit 1, reflects the parties' agreement, including the defendant's agreement to enter a guilty plea to the charges in the Information. In order to expedite this matter and the proposed resolution, and in light of the current COVID-19 pandemic, the parties are requesting that the Court set a change of plea hearing to be held by videoconference as soon as practical on the Court's regular weekly criminal calendar.

      The defendant resides in Maryland, and voluntarily wishes to appear before the Court for this hearing by video conference, and he has been advised by counsel and understands that he has the right under the Constitution and the Federal Rules of Criminal Procedure to be present at the proceeding. The

STIPULATION RE CHANGE OF PLEA       1

parties also agree that the defendant shall appear, by video conference, before a Magistrate Judge in this district to be arraigned and advised of the charges on July 6, 2020.

The parties further stipulate that (1) in light of the COVID-19 pandemic, the change of plea hearing cannot be conducted in person without seriously jeopardizing public health and safety and (2) the interests of justice weigh in favor of conducting the change of plea hearing expeditiously without delay that may be caused by the pandemic, subject to the availability of the Court.

SO STIPULATED.

DATED: June 25, 2020

DAVID L. ANDERSON
United States Attorney

/s/
LLOYD FARNHAM
ANDREW F. DAWSON
Assistant United States Attorneys

DATED: June 25, 2020

/s/
ABBE D. LOWELL
ERIC M. MEIRING
Attorneys for Defendant Jack Abramoff

## ORDER

Pursuant to stipulation, the above-captioned matter will be set for a change of plea hearing on July 14, 2020. The parties will appear by telephonically. The Court finds that (1) in light of the ongoing COVID-19 pandemic, the hearing cannot be conducted in person without seriously jeopardizing public health and safety; and (2) in the interests of justice the change of plea cannot be delayed in light of the pandemic.

IT IS SO ORDERED.

DATED: 7/13/2020

HON. RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

STIPULATION RE CHANGE OF PLEA                    2

# Exhibit 1
# Plea Agreement

DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

LLOYD FARNHAM (CABN 202231)
ANDREW F. DAWSON (CABN 264421)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Lloyd.Farnham@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. |
|     Plaintiff, | |
|   v. | PLEA AGREEMENT |
| JACK ABRAMOFF, | |
|     Defendant. | |

    I, Jack Abramoff, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written Plea Agreement (the "Agreement") pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

    1.    I agree to plead guilty to Counts One and Two of the captioned Information, charging me with violation of 18 U.S.C. § 371 (conspiracy) and 2 U.S.C. § 1606(b) (Lobbying Disclosure Act).

    I agree that the elements of 18 U.S.C. § 371 are as follows: (1) there was an agreement between two or more persons to commit an offense against the United States, specifically, wire fraud in violation

of 18 U.S.C. § 1343; (2) the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act, after the defendant became a member of the conspiracy, for the purpose of carrying out the conspiracy.

I agree that the elements of 2 U.S.C. § 1606(b) are as follows: (1) the defendant made a lobbying contact or was employed or retained to make a lobbying contact; (2) the defendant was acting as a lobbyist, that is the defendant was employed or retained by a client for services that include more than one lobbying contact and engaged in lobbying activities for at least 20 percent of the time spent working for the client over a three-month period; and (3) the defendant knowingly and corruptly failed to register with the Secretary of the Senate and the Clerk of the House of Representatives within 45 days of a lobbying contact, or being employed or retained to make a lobbying contact.

I agree that the maximum penalties are as follows:

| | | | |
|---|---|---|---|
| a. | Maximum prison term | | 5 years |
| b. | Maximum fine | | $250,000 |
| c. | Maximum supervised release term | | 3 years |
| d. | Restitution | | As determined by the Court |
| e. | Mandatory special assessment | | $100 per felony count |

I understand that I am pleading guilty to multiple violations and that the Court may order that my sentence for each violation run consecutively.

2. I agree that I am guilty of the offenses to which I am pleading guilty, and I agree that the following facts are true:

In approximately June 2017, I began consulting for NAC Foundation and its CEO Marcus Andrade. I was engaged to work on aspects of public relations and marketing of the NAC Foundation's new cryptocurrency project, AML Bitcoin. I understood from Marcus Andrade and others associated with the project that the AML Bitcoin cryptocurrency was in development, and that the project was raising money through the sales of AML Bitcoin tokens that would later be exchanged for the completed coin once launched.

Beginning in August 2017, as part of my public relations role with AML Bitcoin, I recruited and

PLEA AGREEMENT                                   2

paid writers to disseminate articles relating to AML Bitcoin, and these articles were published as op-ed pieces on various news and financial websites. I also assisted with the drafting of press releases for the NAC Foundation and Marcus Andrade. I relied on information I obtained from Marcus Andrade and others associated with AML Bitcoin for the content contained in the op-eds and press releases. I understood the purpose of the articles was to promote AML Bitcoin, and to increase public awareness and perception of the AML Bitcoin, in advance of the first public sales of the AML Bitcoin tokens set to begin in about October 2017. After the period that the NAC Foundation and Marcus Andrade referred to as the "initial coin offering," which was from October 2017 to February 2018, I continued to work with Marcus Andrade and the NAC Foundation.

During my involvement with AML Bitcoin and Marcus Andrade I became aware that certain information from Marcus Andrade and others about the development and financial condition of the NAC Foundation and the AML Bitcoin project was not accurate. For example, I became aware that Marcus Andrade had inappropriately taken approximately $1 million from the project, which was hindering its development, and that certain foreign governments and public agencies were not as close to adopting AML Bitcoin as Marcus Andrade and others told me and stated publicly. Despite this knowledge, I continued to help draft and disseminate press releases and promote AML Bitcoin. I also directly solicited individuals to purchase tokens knowing the AML Bitcoin project was short of funds for operations.

I agree that no later than January 2018, I entered an understanding with Marcus Andrade and others, and as part of that understanding I drafted and helped disseminate information regarding AML Bitcoin, including falsely stating that NBC and the NFL rejected AML Bitcoin's Super Bowl advertisement when neither entity had finally rejected the advertisement. I understand that this false and misleading statement was made as part of a conspiracy, a purpose of which was to raise funds through the sale of AML Bitcoin tokens through false and misleading statements to the public and prospective purchasers of AML Bitcoin tokens. I acknowledge that in connection with and in furtherance of the conspiracy, purchasers used interstate wires to transfer funds to the NAC Foundation and Marcus Andrade.

In June 2017, I was introduced to a person that I later learned was an undercover agent with the

PLEA AGREEMENT                                3

1 FBI. I agreed to be retained by that person for services that would involve having at least one potential communication with a member of the U.S. Congress related to the formulation and adoption of a specific piece of possible federal legislation. During later conversations with that member of the U.S. Congress unrelated to lobbying, I discussed topics that constituted lobbying as defined by the Lobbying Disclosure Act. Because I believed my involvement in a project can have a negative impact on my client and the project, I did not want to register as a lobbyist and took affirmative steps not to do so. I was aware of the registration requirements of the Lobbying Disclosure Act, and I did not register with the Secretary of the Senate and the Clerk of the House of Representatives within 45 days of being retained to make a lobbying contact by the undercover agent.

3. I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence. I also agree to waive venue, if necessary, for the charges filed in this case.

4. I agree to give up my right to appeal my conviction, including constitutional challenges to the statutes of conviction. I agree to give up my right to appeal the judgment and all orders of the Court. I also agree to give up my right to appeal any aspect of my sentence, including any orders relating to restitution, reserving only my right to claim that my sentence violated this plea agreement, applicable law, or the Constitution. I reserve my right to claim that my counsel was ineffective. I understand that this waiver includes, but is not limited to, any and all constitutional or legal challenges to my convictions and guilty pleas, including arguments that the statutes to which I am pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support my pleas of guilty.

5. I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective.

6. I agree not to ask the Court to withdraw my guilty pleas at any time after they are

PLEA AGREEMENT                                    4

entered. In the event I violate any of the terms of the Agreement, I agree that the facts set forth in Paragraph 2 of this Agreement and, if applicable, the fact that I made a sworn admission to them in a previous court proceeding, shall be admissible against me in any subsequent proceeding, including at trial. In any subsequent proceeding conducted after I violate any of the terms of the Agreement, I expressly waive any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of the Agreement and, if applicable, the fact that I made a sworn admission to them at a previous court proceeding.

7. I understand that the Court must consult the United States Sentencing Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I also agree that the sentencing range will be calculated by the Court. I may join a government motion for a downward departure pursuant to U.S.S.G. § 5K1.1, and I reserve my right to argue for a variance from the Guidelines range determined by the Court based on 18 U.S.C. § 3553(a) factors. I understand that regardless of the sentence that the Court imposes on me, I will not be entitled, nor will I ask, to withdraw my guilty plea.

8. The parties have agreed to, and jointly recommend that the Court adopt, the following aspects of the application of the Guidelines in this case, prior to any motion brought by the government under USSG § 5K1.1: The appropriate analog sentencing guideline for a violation of 2 U.S.C. § 1606(b) is USSG § 2M4.1, with a base offense level of 6. The appropriate measure of any offense level adjustment under USSG § 2B1.1(b)(1) in this case is the pecuniary gain of the defendant as a result of the offense conduct described above, and the amount of pecuniary gain is between $150,000 and $250,000 under USSG § 2B1.1(b)(1)(F). The offense conduct involved more than 10 victims under USSG § 2B1.1(b)(2). A one-category downward departure regarding the defendant's Criminal History Category is appropriate in order not to overstate the seriousness of his criminal history, to no more than CHC II. The parties have reached no agreement regarding any other aspects of the application of the Guidelines, and reserve the right to recommend or oppose the application of other Guidelines factors.

9. I agree that regardless of any other provision of this Agreement, the government may and will provide the Court and the Probation Office with all information relevant to the charged offense and the sentencing decision, including any victim impact statements and letters from the victim(s), and/or

PLEA AGREEMENT                                    5

their friends and family.

10. I agree that I will make a good-faith effort to pay any fine or restitution I am ordered to pay. I agree to pay the special assessment at the time of sentencing.

I agree to pay full restitution for all losses caused by all the schemes or offenses with which I was charged in this case, and I understand that the amount of restitution will not be limited to the loss attributable to the counts to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I understand that the Court will not consider my economic circumstances in determining the restitution amount. I agree to pay restitution in an amount to be set by the Court at the time of sentencing.

In light of a related pending civil action that provides for disgorgement that can be distributed to victims in this case, the government will take that disgorgement amount into consideration when making its restitution recommendation to the Court and the Probation Office.

Any restitution payments shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

I understand that the restitution described above creates a lien in favor of the United States on all property and rights to property I may possess upon entry of judgment and continues for the later of 20 years from the entry of judgment or 20 years after release from imprisonment or until the debt is paid in full. I further understand the government will record a notice of the lien in any county where I reside or have property. I further understand that this order of restitution cannot be discharged in bankruptcy and that if I default on the payment of a fine or restitution, the Court may revoke probation or a term of supervised release, modify the terms or conditions of probation or supervised release, resentence me, hold me in contempt of court, order the sale of property, enter or adjust a payment schedule, or take any other action necessary to obtain compliance.

At least sixty days prior to sentencing, I agree to complete, under penalty of perjury, a financial statement provided by the U.S. Attorney's Office and to update that statement with material changes within seven days of the change. I understand that I must identify all assets and financial interests valued at more than $1,000. I further understand that these assets and financial interests include all assets and financial interests in which I have an interest, direct or indirect, whether held in my own name or in the name of another, in any property, real or personal.

PLEA AGREEMENT 6

I agree to surrender assets I obtained as a result of my crimes, and release funds and property under my control in order to pay any fine or restitution. I further agree to notify the Financial Litigation Unit, United States Attorney's Office ("FLU") before transferring any interest in property owned directly or indirectly by me, including any interest held or owned under any other name or entity, including trusts, partnerships, and/or corporations. I also agree to notify the FLU of any interest in property I may obtain, directly or indirectly, including any interest obtained under any other name, or entity, including a trust, partnership, or corporation, after the execution of this Plea Agreement until the fine or restitution is paid in full.

I agree that any fine or restitution imposed by the Court against me will be due immediately and subject to immediate enforcement by the government as authorized by 18 U.S.C. § 3613. I further understand that the government may seek immediate collection of the entire fine or restitution from any assets without regard to any schedule of payments imposed by the Court or established by the Probation Office and that monetary penalties imposed by the Court will be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property I receive may be offset and applied to federal debts.

11.   I agree to cooperate with the U.S. Attorney's Office before and after I am sentenced. My cooperation will include, but will not be limited to, the following:

   a.   I will meet with the government when requested;
   b.   I will respond truthfully and completely to any and all questions put to me, whether in interviews, before a grand jury, or at any trial or other proceeding;
   c.   I will provide all documents and other material asked for by the government;
   d.   I will testify truthfully at any grand jury, court, or other proceeding as requested by the government;
   e.   I will surrender any and all assets acquired or obtained directly or indirectly as a result of my illegal conduct;
   f.   I will request continuances of my sentencing date, as necessary, until my cooperation is completed;

12.   I agree that the government's decision whether to file a motion pursuant to U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e), as described in the government promises section below, is based on its sole and exclusive decision of whether I have provided substantial assistance and that decision will be

PLEA AGREEMENT                         7

binding on me. I understand that the government's decision whether to file such a motion, or the extent of the departure recommended by any motion, will not depend on whether convictions are obtained in any case. I also understand that the Court will not be bound by any recommendation made by the government.

13. I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government; and not to fail to comply with any of the other promises I have made in this Agreement. I agree that if I fail to comply with any promises I have made in this Agreement, then the government will be released from all of its promises in this Agreement, including those set forth in the Government's Promises Section below, but I will not be released from my guilty plea[s].

14. If I am prosecuted after failing to comply with any promises I made in this Agreement, then (a) I agree that any statements I made to any law enforcement or other government agency or in Court, whether or not made pursuant to the cooperation provisions of this Agreement, may be used in any way; (b) I waive any and all claims under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule, to suppress or restrict the use of my statements, or any leads derived from those statements; and (c) I waive any defense to any prosecution that it is barred by a statute of limitations, if the limitations period has run between the date of this Agreement and the date I am indicted.

15. I agree that this Agreement contains all of the promises and agreements between the government and me, that this Agreement supersedes all previous agreements that I had with the government (including any "proffer" agreement), and I will not claim otherwise in the future. No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

16. I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

The Government's Promises

17. The government agrees not to file any additional charges against the defendant that could be filed as a result of the investigation that led to the captioned Information, so long as the defendant has

PLEA AGREEMENT                                    8

fully disclosed such conduct to the government and otherwise complied fully with this Agreement.

18. If, in its sole and exclusive judgment, the government decides that the defendant has cooperated fully and truthfully, provided substantial assistance to law enforcement authorities within the meaning of U.S.S.G. § 5K1.1, and otherwise complied fully with this Agreement, it will file with the Court a motion under § 5K1.1 and/or 18 U.S.C. § 3553 that explains the nature and extent of the defendant's cooperation and recommends a downward departure.

The Defendant's Affirmations

19. I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

20. I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

21. I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Dated: _____

JACK ABRAMOFF
Defendant

DAVID L. ANDERSON
United States Attorney

Dated: _____

LLOYD FARNHAM
ANDREW F. DAWSON
Assistant United States Attorneys

PLEA AGREEMENT                    9

22. I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the rights my client is giving up by pleading guilty, and, based on the information now known to me, my client's decision to plead guilty is knowing and voluntary.

Dated: _____

                                          ABBE D. LOWELL
                                          ERIC M. MEIRING
                                          Attorneys for Defendant