CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTIAAN H. HIGHSMITH (CABN 296282)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    christiaan.highsmith@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JACK ABRAMOFF, <br><br> Defendant. | CASE NO. 20-CR-260 RS <br><br> UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE UNDER U.S.S.G. § 5K1.1 <br><br> Sentencing Date: November 18, 2025 <br> Time: 2:30 p.m. <br> Court: Hon. Richard Seeborg |

## I. INTRODUCTION

The United States respectfully submits this sentencing memorandum and motion for a downward departure for Defendant Jack Abramoff. For the reasons set forth below, the government (1) agrees with the PSR that the total offense level for the defendant's conduct is 15; (2) supports, per the Plea Agreement, an advisory sentencing Guidelines range of 21-27 months based on Criminal History Category II (compared with the Probation Office's calculated sentencing range of 24-30 months based on Criminal History Category III); (3) moves, pursuant to U.S.S.G. § 5K1.1, for an 8-level downward departure to offense level 7 based on the defendant's substantial assistance; (4) recommends, after

weighing the sentencing factors under 18 U.S.C. § 3553(a), a further three-level variance to offense level 4 (Zone A); and finally recommends that the Court impose a sentence of three years' probation, a special assessment of $200, and restitution of $2,203,920.29 joint and several with co-schemer Rowland Marcus Andrade.

## II.     FACTUAL BACKGROUND

The Court is familiar with the facts of this matter. From mid-2017 through late 2018, Jack Abramoff was an advisor and confidant of—and co-schemer with—AML Bitcoin founder and CEO, Marcus Andrade. Abramoff implemented Andrade's strategy to drive public attention toward AML Bitcoin through a misleading press campaign that encouraged the public to invest in Andrade's cryptocurrency project based on false promises and representations. Abramoff also brought in investors, including friends, family, and acquaintances, which earned Abramoff approximately $225,000 in commissions. Abramoff, however, earned far less than Andrade, who exercised complete control over the finances of AML Bitcoin, including all investment money into the project and all spending. In total, more than $8 million in AML Bitcoin investor funds flowed into accounts controlled by Andrade, who used several million dollars in investor money to purchase real estate and luxury vehicles for himself in addition to funding his international travel. In short, Abramoff is significantly less culpable for this fraud scheme than Andrade.

Abramoff started working for Andrade on his cryptocurrency project in approximately June 2017. Andrade directed Abramoff to publicize government support for the AML Bitcoin project. With Andrade's approval, Abramoff used his lobbying contacts to get pro-AML Bitcoin statements read into the Congressional Record. Abramoff and Andrade then publicized the pro-AML Bitcoin statements to mislead the public and potential investors into believing AML Bitcoin had support in Washington, D.C. and on Capitol Hill.

Shortly thereafter, Abramoff and Andrade worked together to implement Andrade's strategy to generate media attention for AML Bitcoin in advance of its initial coin offering (ICO) scheduled for October 2017. Working with Andrade, Abramoff used his contacts in the media to publish misleading

editorials and op-ed pieces in publications such as *U.S. News & World Report*, the *Washington Times*, *Forbes*, the *Observer.com*, and *Investor's Business Daily*. With Andrade's approval, the articles falsely claimed that (1) members of Congress were looking at the know-your-customer (KYC) and anti-money laundering (AML) capabilities of AML Bitcoin, (2) AML Bitcoin was a complete product with biometric identification and specialized security features already built into its blockchain, and/or (3) AML Bitcoin was close to signing significant business deals with government and private sector entities around the world. In fact, Abramoff paid the authors to write the articles, Abramoff provided the informational material in the articles, and the information was false and misleading. This was hidden from readers and the public. At trial, investors testified that the op-eds and editorials influenced their decision to invest in AML Bitcoin.

Abramoff also assisted Andrade in generating media attention for AML Bitcoin by hiring foreign advisors to set up meetings for Andrade with foreign government and private sector contacts, including in Panama, London, continental Europe, and San Francisco. Andrade and Abramoff misleadingly characterized the meetings as promising business opportunities with partners imminently interested in exploring or partnering with AML Bitcoin. In truth, these potential partners—such as the Port of San Francisco, the Panama Maritime Authority, and the Panama Canal—had no interest in using or working with AML Bitcoin.

Abramoff also worked with Andrade to generate media attention for AML Bitcoin by falsely stating that the NFL and NBC had reviewed and rejected AML Bitcoin's Super Bowl advertisement for being too controversial when neither entity had actually rejected the advertisement. Abramoff and Andrade perpetuated this false Super Bowl rejection campaign to drive attention and investment to the AML Bitcoin project.

Separately, in 2017, Abramoff engaged in lobbying efforts in Washington, D.C. in connection with the marijuana industry. Abramoff did not register as a lobbyist, despite knowing that he was required to do so, and he took affirmative steps to not register as a lobbyist.

//

## III. PROCEDURAL HISTORY

On June 25, 2020, the United States charged Abramoff in a two-count information with conspiracy, in violation of 18 U.S.C. § 371; and violation of the Lobbying Disclosure Act, in violation of 2 U.S.C. § 1606(b). Dkt. 1. On July 14, 2020, Abramoff pleaded guilty to both charges. Dkt. 14. A summary of the facts of this case are set out in the PSR and in the Plea Agreement. *See* PSR, ¶¶ 6-26; Plea Agrm. (Dkt. 14), ¶ 2.

In the Plea Agreement, the defendant agreed to the following Guidelines calculations:

| Guideline | Guideline Section | Level |
|---|---|---|
| Base Offense Level | § 2X1.1(a)<br>§ 2B1.1(a)(2) | 6 |
| Specific Offense Characteristics:<br>Loss more than $150,000 but less than $250,000<br>10 or more victims | § 2B1.1(b)(1)(F)<br>§ 2B1.1(b)(2)(A)(i) | +10<br>+2 |
| Acceptance of Responsibility | § 3E1.1 | -3 |
| Total Offense Level | | 15 |

Dkt. 14. The parties and the Probation Office agree on the Guidelines calculation above.[1] The government and the defense agree that the defendant's Criminal History Category of III overstates the defendant's criminal history and therefore the defendant should fall in Criminal History Category II, which results in an advisory Guidelines range of 21-27 months. Dkt. 14. However, the Probation Office correctly notes that the 2025 Sentencing Guidelines Manual has removed departures related to criminal history and recommends that the Court consider whether a variance under § 3553(a) is appropriate to address the defendant's criminal history. PSR ¶ 60 n.1. Thus, the Probation Office places the defendant in Criminal History Category III and calculates an advisory Guidelines range of 24-30 months.

The Plea Agreement also provides that if, in its sole and exclusive judgment, the government decides that the defendant has cooperated fully and truthfully, provided substantial assistance to law

---

[1] The PSR correctly calculates that the defendant's conviction for violating the Lobbying Disclosure Act does not increase the defendant's applicable Guidelines range. PSR ¶ 50.

US Sentencing Memo                    4
20-CR-260 RS

enforcement within the meaning of Section 5K1.1, and otherwise complied fully with the Plea Agreement, it will file a motion that explains the nature and extent of the defendant's cooperation and recommends a downward departure. Dkt. 14 ¶ 12. The government now makes such a motion.

### IV. THE COURT SHOULD SENTENCE THE DEFENDANT TO THREE YEARS OF PROBATION

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (en banc); 18 U.S.C. § 3553(a)(2). The Court should begin the sentencing process by correctly calculating the applicable Guidelines range and must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). The Court should then consider the factors outlined in Section 3553(a) to determine the appropriate sentence. *Ressam*, 679 F.3d at 1089. If the Court determines that a sentence outside of the Guidelines range is warranted, it must ensure that the "justification is sufficiently compelling to support the degree of the variance." *Id.* (internal quotation omitted). "[A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

#### A. The Court Should Grant an 8-Level Departure Based on the Defendant's Substantial Assistance

Abramoff's early and substantial cooperation resulted in the prosecution of Marcus Andrade, who was indicted on June 22, 2020, on one count of wire fraud, 18 U.S.C. § 1343, and one count of money laundering, 18 U.S.C. § 1956(a)(1). With Abramoff's substantial assistance, including his testimony at Andrade's trial, Andrade was convicted after trial on all counts and sentenced to 84 months in prison and ordered to forfeit $8,374,609 and pay restitution to victims of $2,203,920.29.

In February 2020, Abramoff made an early and timely decision to cooperate with law enforcement and accept responsibility for his illegal lobbying and his involvement in the AML Bitcoin

fraud scheme. Abramoff's cooperation was useful and significant because it assisted authorities in charging the most culpable member of the fraud scheme, AML Bitcoin founder and CEO Marcus Andrade. Abramoff continued cooperating with authorities from 2020 through Andrade's trial in 2025. Abramoff spent many hours in debriefings with law enforcement on multiple occasions. In addition, he participated in hours of witness prep in anticipation of testimony in the Andrade trial, and he testified as a government witness in the Andrade trial. His testimony was thoughtful and credible.

Significantly, Abramoff testified at trial shortly after receiving a diagnosis for aggressive stage 4 lymphoma and while undergoing chemotherapy. The effects of Abramoff's chemotherapy treatment were apparent during his testimony. Abramoff coughed regularly and displayed noticeable fatigue. His trial testimony included nearly one-and-a-half days of rigorous and fulsome cross examination on a wide variety of topics. Abramoff answered all questions directly and candidly. He accepted responsibility for his criminal involvement in the fraud scheme, and he fully explained the operation of the fraud scheme and his collaboration with Andrade to execute the scheme. Abramoff's testimony was corroborated by his WhatsApp and email communications with Andrade and others.

In summary, Abramoff's cooperation was extraordinary. He has earned a substantial downward departure pursuant to U.S.S.G. § 5K1.1. The government recommends an 8-level departure from offense level 15 to offense level 7.

### B.   The Court Should Vary Further from the Guidelines Because of Certain Section 3553(a) Factors

The government respectfully submits an additional three-level variance—from offense level 7 to offense level 4 (Zone A, 0-6 months)—is warranted because of the defendant's medical condition, age, and overstated criminal history. In late 2024, Abramoff was diagnosed with aggressive stage 4 lymphoma. He underwent six cycles of chemotherapy treatment in the middle of trial preparation and trial in the Andrade case. Per Abramoff's oncologist, the chemotherapy treatment led to significant side-effects. Now, months later, Abramoff's treatment is completed, and he has achieved remission. Nonetheless, he has ongoing health-related concerns. He remains immunosuppressed and is at high risk

for infections. According to his oncologist, if Abramoff were to develop an infection, his risk of protracted and severe complications is much higher than the average person. In addition to infection risk, cancer- and chemotherapy-related fatigue commonly persist well after completion of therapy. Abramoff's oncologist further advises that the highest risk for recurrence of cancer is within the first two years after completion of treatment and that his cancer is not considered cured until he remains in remission for five years. She also advises that early detection of a recurrence is key in improving outcomes. The government submits that in combination with his age (67 years old in February 2026), Abramoff's recent cancer diagnosis, treatment, and need for monitoring warrants a downward variance pursuant to § 3553(a).

Further, the government respectfully submits that Criminal History Category III overstates the seriousness of the defendant's criminal history and therefore the government requests a further downward variance under § 3553(a). The government makes this request given that the U.S. Sentencing Commission has removed the departures related to criminal history from the 2025 Sentencing Guidelines Manual. Abramoff's prior convictions are serious and significant, and the government does not seek to downplay the seriousness of Abramoff's prior criminal conduct. However, his prior convictions are old. The prior criminal conduct dates to the early 2000s. Abramoff was sentenced for that conduct in 2006 and 2008, respectively, no less than 17 years ago. Given the age of his prior convictions and prior criminal conduct, the government submits that a further downward variance is necessary to appropriately account for Abramoff's criminal history. Further, given his age, medical condition, acceptance of responsibility, and candid cooperation with the government for the past five years, the government submits that Abramoff is not a recidivism risk and that a non-custodial sentence is warranted.

## V.    THE DEFENDANT SHOULD PAY RESTITUTION

The Mandatory Victims Restitution Act of 1996 (the "MVRA") provides that "when sentencing a defendant convicted of an offense described in [§ 3663A(c)], the court shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). A "victim" is "a

person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." *Id.* § 3663A(a)(2). The MVRA applies to cases of an offense resulting in damage to or loss or destruction of property of a victim. *Id.* § 3663A(b)(1).

The Court previously ordered that Marcus Andrade pay $2,203,920.29 in restitution to identifiable victims of the AML Bitcoin fraud scheme. In his Plea Agreement, Abramoff admitted to conspiring with Andrade to further the fraud scheme and agreed to pay full restitution for all losses caused by the scheme. Accordingly, the Court should order that Abramoff pay $2,203,920.29 in restitution to victims of the AML Bitcoin fraud scheme joint and several with Andrade.

## VI. CONCLUSION

For the reasons set forth above, the United States respectfully recommends that the Court impose a sentence of three years' probation, order restitution of $2,203,920.29 joint and several with Marcus Andrade, and impose a special assessment of $200.

DATED: November 11, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

　　　/s/ *Christiaan Highsmith*
CHRISTIAAN H. HIGHSMITH
Assistant United States Attorney